**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

IN RE:                                                     CASE NO. 09-06350 EAG

PEDRO A. ORTIZ NEGRON, and
HELEN CORDERO ALDAHONDO,                                   CHAPTER 13

                 DEBTORS.                                  FILED & ENTERED ON 06/10/2015
_____

**OPINION AND ORDER**

Pending before the court are the debtors' objection to Banco Popular de Puerto

Rico's ("BPPR") amended proof of claim #3-2 and BPPR's opposition thereto. (Docket Nos.

55 & 61.) For the reasons stated below, the court grants the debtors' objection.

**I. Jurisdiction.**

This court has jurisdiction over the subject matter and the parties pursuant to 28

U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title

11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated

July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. §

157(b).

**II. Procedural History.**

Pedro Ortiz Negron and his wife Helen Cordero Aldahondo filed a joint petition for

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

1

relief under chapter 13 of the Bankruptcy Code on July 31, 2009.[2]  (Docket No. 1.)  Debtors

included in schedule A their primary residence, located in Ponce, Puerto Rico, valued at

$45,000.00.  Id.  Prior to being married, Mr. Ortiz had acquired the property in 1993 for the

price of $22,550.00.  (Claims Register No. 3-2.)  In January 2000, he and his wife entered

into a 15-year mortgage on the property in favor of R-G Mortgage and Investment

Corporation in the amount of $20,000.00, with 9% annual interest.  Id.  The mortgage note

was later transferred to BPPR.  Id.

On October 19, 2009, BPPR filed a wholly secured claim in the amount of

$15,844.45.  (Claims Register No. 3-1.)  Debtors objected to the proof of claim, arguing that

the bank had not stated a basis for a $1,690.96 charge included therein.  (Docket No. 18.)

BPPR responded by clarifying that the amount corresponded to advances made by the bank

under the loan contract, and the debtors withdrew their objection.  (Docket Nos. 22, 26 &

28.)

Debtors' amended plan, dated January 21, 2010, was confirmed on December 29,

2010.  (Docket Nos. 23, 45 & 47.)  The amended plan proposed that the trustee pay in full

the secured claim of BPPR in the amount of $15,844.45, which is the amount BPPR included

in its proof of claim, as well as the debtors' attorney's fees, with unsecured creditors

receiving pro-rata disbursements of the remainder.  (Docket No. 23.)

On July 1, 2014–during the 60th month of debtors' chapter 13 plan–BPPR amended

its proof of claim, increasing the amount of its wholly secured claim to $21,938.05.  (Claims

Register No. 3-2.)  Debtors objected to the amended proof of claim on September 5, 2014,

---

[2]/Unfortunately, Ms. Cordero passed away during the pendency of this case.  (Docket No. 64.)

arguing that BPPR could not amend its claim since it was bound by the provisions of the confirmed plan, and that the bank's amended claim was an attempt to collaterally attack the terms of the debtors' plan.[3] (Docket No. 55.) In its opposition, BPPR countered that as an oversecured creditor it is entitled to collect postpetition interest. (Docket No. 61.) BPPR argued that the plan provided for the payment of its claim in full, and that the bank was simply adhering to the claims allowance process by amending its proof of claim to include additional interest and fees that had accrued during the pendency of the case. Id. BPPR also argued that to read the plan otherwise would run contrary to section 1322(b)(2), which prohibits the modification of a creditor's rights that are secured by a debtor's principal residence, absent certain exceptions that do not apply here. Id. Both parties have since filed replies, and the chapter 13 trustee has also objected to the amended proof of claim. (Docket Nos. 66, 69 & 72.)

## III. Applicable Law and Discussion.

The court is not persuaded by BPPR's arguments, and instead adopts the reasoning of a recently decided case in this district, In re Alonso, 525 B.R. 195 (Bankr. D.P.R. 2015). In facts similar to the present case, BPPR–the same secured creditor as in this case–filed an amendment to its proof of claim to assert additional prepetition arrears just three months prior to the debtor completing her chapter 13 plan payments. Id. at 197. The bank's claim was secured by a mortgage on the debtor's residence. Id. at 195. The debtor and the chapter 13 trustee both objected to the tardily filed proof of claim, and the debtor's

---

[3] A prior objection was denied by court services for failure to comply with Local Bankruptcy Rule 3007-1(c). (Docket Nos. 52 & 54.)

objection was granted.  Id. at 198-200.

The bank raised the same arguments there as here, namely that the debtor was precluded by section 1322(b) from, in effect, modifying its rights by not paying the full amount of arrears the debtor had incurred on the mortgage, and that, in any event, amendments to proofs of claim are freely allowed to reflect adjustments in the amounts due.  Id. at 198-99.  Addressing BPPR's first argument, the Alonso court distinguished between plans that propose to cure mortgage arrears on a debtor's residence, which are permitted under section 1322(b)(3) and (b)(5), and those that make substantive changes to a debtor's obligations to the mortgage creditor, which are not (unless the exception under 1322(c) applies) .  Id. at 201.  In finding that the debtor's plan did not violate this section of the Code, the court pointed out that the debtor did not modify the secured creditor's rights by, for instance, lowering the monthly payments, changing the interest rate, or extending the maturity date of the mortgage note, and instead only sought to cure the arrears that BPPR itself had included in its original proof of claim.  Id. at 202.

As to whether the amendment to the proof of claim should be allowed, the Alonso court applied a two-part test, first seeing whether a timely filed similar claim had already been asserted, and then deciding whether it was equitable to permit the amendment despite the binding effect of the confirmation order, which set forth the obligations of the debtor and each creditor.  Id. at 205 (citing Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 284.1, at ¶[3], Sec. Rev. May 5, 2010, www.Ch13online.com.) The second part of this inquiry took into consideration three factors: "(i) the proposed amendment must not be a veiled attempt to assert a new right to payment as to which the

debtor estate was not fairly alerted by the original proof of claim; (ii) the amendment must not result in unfair prejudice to unsecured creditors; and (iii) the amendment must not be the product of bad faith or dilatory tactics on the part of the claimant." Alonso, 525 B.R. at 206 (citing In re Hemingway Transp., 954 F.2d 1, 10 (1st Cir. 1992)).

Applying this test, the Alonso court found that the amended claim was similar to the timely filed original claim and did not attempt to assert a new right to payment, but that since it was filed so close to the end of the debtor's five-year plan, it would be prejudicial to the debtor, the unsecured creditors, and the trustee to allow it. Id. at 206. The court felt that the amended claim was a "dilatory tactic" intended to collaterally attack the confirmed plan, and that "[t]he late filing by BPPR to correct its own mistake left no time for the Debtor to take corrective action." Id. Stressing the fact-intensive nature of the inquiry, the court concluded that BPPR had waived its right to receive the additional amounts asserted in its amended proof of claim, stating:

> The timing of the filing of an amended secured claim on the 57th month of the Chapter 13 plan which is statutorily limited to 60 months precludes the debtor and other creditors to further move for a post-confirmation modification of the Chapter 13 plan. The Debtor had already committed all of her disposable income to fund the plan for 57 months. The Debtor at this stage is unable to meet the deficiency caused by the amended claim. The debtor fully disclosed the secured debt of BPPR in her schedules and Chapter 13 plans. The Debtor gave adequate notice of the treatment being given to BPPR, relying on the information provided by BPPR in its original claim. Any economic harm suffered by BPPR is due to its own mistake in the arrears disclosed in the original proof of claim and its belated attempt to correct the same.

Id. at 207.

Turning to the present case, the court herein finds that the debtors' confirmed plan does not violate section 1322(b)(2), since, like in Alonso, it seeks only to cure the mortgage

5

arrears. See Alonso, 525 B.R. at 202. Further, the plan does not fundamentally modify BPPR's rights by lowering the monthly payments, changing the interest rate, or by extending the maturity date of the loan. See Alonso, 525 B.R. at 202.

As to whether the amendment of the proof of claim should be permitted, the court first determines that the amended claim asserts a similar right to payment as the bank's original claim, which was filed timely. (Claims Register No. 3-1.) Both claims correspond to the same mortgage over the Ponce property, with the only difference being the amount of pre- and postpetition arrears, fees, and penalties. (Claims Register Nos. 3-1 & 3-2.) Therefore, the amended claim satisfies the first step set forth in Alonso.

With regard to the second step, BPPR filed its original proof of claim wholly secured in the total amount of $15,844.45. (Claims Register No. 3-1.) The claim consists of $12,170.53 in principal, $1,457.42 in interest accrued between June 1, 2008 and September 30, 2009, $190.54 in late charges, $1,725.96 in advances under the loan contract, and $300.00 in legal fees. Id. Of this total, $6,333.85 correspond to arrears, $6,049.22 prepetition and $284.63 postpetition. Id. The prepetition arrears are comprised of 14 monthly payments in the amount of $274.79 each, accumulated late charges in the amount of $180.40, advances under loan contract totaling $1,725.96, and legal fees of $300.00. Id. The postpetition arrears consist of one monthly payment in the amount of $274.49 and late charges.[4] Id.

---

[4] Of note, there is an inconsistency in the original proof of claim, which at one point states that there are no postpetition arrears owed, while later stating that there is $284.63 in postpetition arrears. Id.

BPPR amended its proof of claim more than four years later, on July 1, 2014, increasing the total amount of the claim to $21,938.05.  (Claims Register No. 3-2.)  Most of the additional amount reflects an increase in postpetition interest–now calculated through July 31, 2014–to $6,005,19.  Id.  This is offset somewhat by a slight decrease in the amount of principal owed, to $11,604.24.  Id.  The amended claim lists $6,606.92 in prepetition arrears, which reflects a $547.56 increase in accrued late charges; the other fees and charges remain the same.  Id.  The amended claim also includes $1,148.66 in postpetition arrears, which correspond to four missing monthly payments and late charges.  Id.  Based on the above, the court therefore finds that the amended claim is not an attempt by the bank to assert a new right to payment, but instead seeks only to "increase the amount of a claim grounded in the same right to payment."  Hemingway Transp., 954 F.2d at 10.

Ultimately, though, the balance of equities weighs against allowing the amendment to BPPR's proof of claim.  At this late date, the debtors have already committed all of their disposable income to funding the plan for 60 months.  Since chapter 13 plans–by statute–cannot exceed 60 months, the debtors would be unable to cure any deficiency caused by allowing the amended claim, as they would not be able to file a post-confirmation modification of the plan to include the newly revealed arrears.  See 11 U.S.C. § 1322(c). Therefore, the chapter 13 trustee would be forced to attempt to recover the amounts already paid to the unsecured creditors in order to pay BPPR's amended secured claim. This would unfairly prejudice the unsecured creditors.  See Alonso, 525 B.R. at 206-7.

For the same reasons, the court also finds the amended claim to be a dilatory tactic, an attempt at an end-run around the terms of the confirmed plan.  BPPR could have

calculated the additional interest and fees, particularly the postpetition interest which comprised the bulk of the increase, earlier, giving the debtor an opportunity to account for the increased claim over time through a post-confirmation modification of their plan.  And, to the extent the postpetition arrears are due to failure to keep up with plan payments, the bank could have filed a motion to dismiss for failure to make plan payments.   Instead, BPPR remained silent until the last possible moment, even as the debtors tailored their plan to specifically account for the arrears the bank had itself included in its original proof of claim, and then made payments under that plan for 60 months.  Simply put, the bank has waited too long to amend its claim and therefore remains bound by the terms of the confirmed plan.  See In re McLemore, 426 B.R. 728, 744 (Bankr. S.D. Ohio 2010) ("a creditor or other party in interest who chooses to sleep on its rights by not objecting to a plan does so at its own peril and as long as due process requirements are met, will be bound by it."). While courts have been hesitant to set bright line deadlines for a secured creditor in a chapter 13 case to amend a claim that is being provided for under the plan, the court agrees with the reasoning of Alonso, which held that "[t]he uncontested facts in this case tilt the scales in favor of the binding effect of a confirmed Chapter 13 plan, and do not weigh in favor of the claims allowance process upon the filing of an amended claim."  Alonso, 525 B.R. at 207.

**IV. Conclusion.**

Based on the above, the court grants the debtors' objection to amended claim # 3-2 at docket number 55.  BPPR's proof of claim #3-1 remains allowed, wholly secured in the amount of  $15,844.45.

SO ORDERED.

In Ponce, Puerto Rico, this 10th day of June, 2015.

Edward A. Godoy
U.S. Bankruptcy Judge